July 15, 2026

**Supreme Court**

No. 2025-45-Appeal.
(PC 15-2137)

Galbin Fernandez, in his capacity as the :
Administrator of the Estate of Eva Pena

          v.              :

Rhode Island Public Transit Authority :
          et al.

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Galbin Fernandez, in his capacity as the :
Administrator of the Estate of Eva Pena

v.                                    :

Rhode Island Public Transit Authority   :
et al.

Present: Suttell, C.J., Robinson, Lynch Prata, Long, and Indeglia (ret.), JJ.

**O P I N I O N**

**Chief Justice Suttell, for the Court.** The plaintiff, Galbin Fernandez, in his capacity as the Administrator of the Estate of Eva Pena, appeals from a Superior Court order denying his motion for a new trial, which he filed after a jury returned a verdict in favor of the defendant, Rhode Island Public Transit Authority (defendant or RIPTA). On appeal, the plaintiff proffers a single evidentiary error—what he characterizes as the so-called unidentified interpreter exception to the rule against hearsay. This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument. For the reasons set forth

- 1 -

herein, we reverse the order of the Superior Court and remand the matter for a new trial consistent with this opinion.

## I

## Facts and Travel

On August 12, 2014, Eva Pena was injured while attempting to board a RIPTA bus departing from Kennedy Plaza in Providence, Rhode Island. On May 21, 2015, she filed suit against RIPTA in the Providence County Superior Court, alleging that RIPTA's bus driver was negligent in closing the bus doors on her, resulting in severe bodily injuries. In 2019, Pena passed away and her estate was substituted as the plaintiff in the action. Nearly ten years after Pena initially filed suit, on September 17, 2024, the case proceeded to trial. We recite herein the trial testimony relevant to the present appeal.

Although Pena passed away prior to trial, her deposition testimony—taken with the assistance of a Spanish interpreter—was read into the record. Pena stated that she was born in the Dominican Republic, but she added that she had lived in the United States since 1979 and could speak a little bit of English. She recalled that, on the day in question around noon or one o'clock in the afternoon, she was standing in Kennedy Plaza waiting for the Broad Street bus. There were eight people in front of her, and she was the last to board. While she was attempting to get on the bus, she stated that the bus driver "blocked the door, the entrance" and "[she] fell on [her]

knees." She said, "Stop, Stop. And the people inside the bus w[ere] yelling, saying, [w]hat happened, what happened? And the bus stopped." When asked whether the doors touched her when they closed, she responded, "Yes. Completely. I was there blocked." She mentioned that she lost consciousness when she fell, and when she came to, "there was a lot of blood[,]" clarifying that the blood was coming from the shin of her right leg.

Afterwards, Pena recalled, "they sat [her] on a bench, and they gave [her] something for the blood [on her] leg, and they took [her] down, and then they put [her] in another bus." She went to the hospital a few days later, but she did not receive treatment and left after four hours of waiting to be seen. She testified to several residual injuries as a result of the incident—mainly, trouble walking and getting around. She stated, "I cannot go shopping, go to laundromat[,] I can hardly go to the church, and I need to go to the church. I used to go to my sister[']s, now I cannot get there."

The deposition testimony of Josef Patyna, the driver of the RIPTA bus Pena was attempting to board when she was injured, was also read into the record. Patyna stated that on the day of the incident he pulled up to the stop and opened the front bus door. People began to get on, and he heard something going on but could not see anything. After the line of people cleared, he saw a woman "complaining something happened to her." She was holding her shin, and Patyna waved over a

nearby RIPTA supervisor, Todd Millard. Patyna stated that he did not close the doors in any manner while Pena or any passenger on the bus was attempting to board. In fact, he stated that the doors remained open "from the stop of the bus until [he] got order to move the bus, [to] proceed to the route."

Millard testified that at the time of the incident in 2014 he was employed as a supervisor for RIPTA. His responsibilities included responding to situations such as, among others, accidents, incidents, and mechanical breakdowns. Millard was in Kennedy Plaza, a couple hundred feet away from the aforementioned incident when Patyna waved him over to the bus. He further testified that he witnessed a female passenger who appeared to be upset with a leg injury that he described as "a small amount of blood dripping down her leg." Millard sat her on a nearby bench, but stated that he was unable to speak with her due to a language barrier—he spoke English and Pena spoke Spanish. There were a few people in the area waiting for other buses, and Millard asked if anyone spoke Spanish and could assist him. He claimed that he was able to find someone and used this person as an interpreter to communicate with Pena.

Millard's testimony and written report regarding his conversation with Pena is central to the present appeal. It was also the subject, in part, of plaintiff's motion *in limine* and motion for a new trial. At the hearing on the motion *in limine*, heard and decided by the trial justice on July 17, 2024, plaintiff's counsel argued that there

was no indicia of reliability for Millard's report describing what Pena allegedly said about the incident because there was no known identity or contact information for the Spanish interpreter who facilitated their conversation. Further, he contended that the statements of the Spanish interpreter were inadmissible double hearsay.

Counsel for RIPTA disagreed, contending that "the words came from the plaintiff's mouth, even though they came through someone who translated * * *." The trial justice stated that she would reserve her ruling on the issue, noting, however, that "if the * * * testimony given at the time of trial is consistent with the arguments and the deposition testimony, I am likely to allow Mr. Millard's report to be admitted as a full exhibit without redaction."

At trial, Millard testified that, with the help of the Spanish interpreter, he asked Pena several questions. He inquired if she needed medical attention or wanted a rescue, which she declined. He then asked her what happened, and he stated that she told him "[t]hat she had tripped." Plaintiff's counsel objected after each question, indicating that he was preserving his pretrial objection to the testimony; the trial justice overruled each objection. Millard also stated that he asked Pena for "[b]asic information" including her name, address, and a contact phone number. As part of his supervisory duties, he prepared a report detailing the information that he collected from Pena. He made no mention of the Spanish interpreter in his report, and when asked why this information was not included, he stated, "I don't have an

answer for that." Millard also failed to obtain a name or any contact information for the Spanish interpreter, adding that he did not think there was a reason to get her information because she did not witness the incident.

Galbin Fernandez, Pena's adult son, also testified at trial. Fernandez testified that he had lived in New Jersey for much of his life; however, he said that he kept in regular contact with his mother in the years surrounding the incident. Pena called him on the day in question, at a time he believed was only a few minutes after the incident occurred when Millard had brought her to sit on a nearby bench. Pena told Fernandez that she was getting on the bus and "she had one leg, you know, on the step of the bus, and all she remembers, she recalls the bus, the doors closing on her leg and her falling, people screaming, you know, for the bus driver to stop." He stated that she did not mention a Spanish interpreter in their conversation.

Following trial, the jury returned a verdict for RIPTA, finding that plaintiff failed to prove defendant's negligence by a fair preponderance of the evidence. The plaintiff moved for a new trial, arguing that the trial justice erred in denying his motion *in limine* "to exclude hearsay statements from a so-called Spanish [i]nterpreter." The plaintiff cited to a case from the United States Court of Appeals for the First Circuit, *Philibotte v. Palizza*, No. 23-1516, 2024 WL 1655919 (1st Cir. April 17, 2024), for the proposition that "statements made by unidentified declarants lack any indicia of reliability."

In response, defendant argued that plaintiff's reliance on the First Circuit case was misplaced because it dealt "with an unidentified declarant, in which statements by the unidentified declarant have been found to be hearsay." The defendant argued that, in this case, the declarant was identified as Pena. RIPTA maintained that the Spanish interpreter was not a declarant, as she was "simply interpreting from Spanish into English what the declarant, Ms. Pena, told her." After hearing the parties' arguments, the trial justice stated:

> "I'm not aware of any Rhode Island law on this issue at all. Frankly, I do think it is, for me at least, a novel issue. It just has never come up before this case. * * * I am not convinced that the plaintiff's argument is correct. I'm not convinced it's completely wrong. This is, to me, somewhat of a gray area. I'm not going to waste the parties' or the [c]ourt's time by granting a new trial based on that issue. I think it's an issue that may in fact belong in the Supreme Court for some clarification. And if that's where plaintiff goes, then there may be some clarity brought to bear on the question. But I'm not going to order a new trial based on that issue, because I am not convinced that the plaintiff is correct. But, again, I'm not convinced that the plaintiff is not correct. So I think the best place for that issue to go is to the decision makers in the State, upstairs on the 7th floor. It is a super interesting issue, frankly."

The trial justice entered an order denying plaintiff's motion for a new trial on December 10, 2024, and plaintiff timely appealed.

## II

## Standard of Review

"It is well settled that we review a trial justice's decision admitting or excluding evidence under an abuse of discretion standard." *State v. Husband*, 162 A.3d 646, 655 (R.I. 2017) (brackets omitted) (quoting *State v. Pona*, 66 A.3d 454, 465 (R.I. 2013)). This Court "will reverse a trial justice's ruling on the admissibility of evidence only where it constitutes a clear abuse of discretion." *State v. Reverdes*, 295 A.3d 770, 777 (R.I. 2023) (quoting *State v. Doyle*, 235 A.3d 482, 493 (R.I. 2020)).

## III

## Discussion

We begin with a brief overview of the hearsay principles relevant to the issue presently before the Court. "Rule 801(c) of the Rhode Island Rules of Evidence defines hearsay as 'a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.'" *State v. Adams*, 161 A.3d 1182, 1198 (R.I. 2017) (quoting R.I. R. Evid. 801). A declarant is defined as "a person who makes a statement[,]" and a statement is "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." R.I. R. Evid. 801(a)-(b). "Hearsay is not admissible

except as provided by law." *State v. Rivera*, 253 A.3d 851, 856 (R.I. 2021) (quoting *State v. Oliveira*, 961 A.2d 299, 314 (R.I. 2008)).

The parties agree that the present issue is one that this Court has not yet passed upon. However, our research reveals two cases, albeit over a century old, that are instructive. In *State v. Epstein*, 25 R.I. 131, 55 A. 204 (1903), this Court addressed the question of whether a victim's statements, made against the defendant and communicated to police through an interpreter, were properly admitted into evidence at trial. *Epstein*, 25 R.I. at 140, 55 A. at 208. There, we stated that "[i]n so far * * * as [the officers'] testimony at the trial related to what [the victim] said in this way, it was clearly hearsay testimony; for they only knew what was in fact said by him from what the interpreter told them that he said." *Id.*

The *Epstein* decision cites to *State v. Terline*, 23 R.I. 530, 51 A. 204 (1902), a case decided by this Court just a year prior. *Epstein*, 25 R.I. at 140, 55 A. at 208. There, the defendant was charged with perjury after testifying as a witness in a criminal action. *Terline*, 23 R.I. at 531, 51 A. at 205. The defendant, who spoke Italian, gave his testimony through a courtroom interpreter; and, at his subsequent perjury trial, the trial justice permitted witnesses who did not understand Italian to testify to the defendant's statements as translated by the interpreter. *Id.* at 531, 539, 51 A. at 205, 207-08. There, we stated:

> "While it is true that the interpretation of the words of a
> witness testifying in a foreign language, by one who is

> sworn in court and translates the testimony to the tribunal, is not obnoxious to the hearsay rule, because both the original witness and the interpreter are under oath and subject to cross-examination, yet where a witness is offered to testify to the statements of another person, spoken in a language not understood by him, but translated for him by an interpreter, such witness is not qualified, because he does not speak from personal knowledge." *Id.* at 539, 51 A. at 208.

We added, "[a]ll which he can know as to the testimony which is in fact given in such a case is from the interpretation thereof which is given by another person." *Id.* However, we noted that, at that time, some courts had recognized an exception "in those cases where the interpreter acts as the agent of the witness in translating his testimony[,]" and, there, "it is held that what the interpreter said is admissible on the ground that the language of the interpreter in such a case is to be taken prima facie, at any rate, as the language of the witness who employs him and speaks through him." *Id.* at 540, 51 A. at 208. It appears that this Court has not had occasion to review or reconsider the issue since. *See State v. Feliciano*, 901 A.2d 631, 646 (R.I. 2006) (declining to substantively revisit our holdings in *Epstein* and *Terline* because the defendant did not properly preserve the issue for review).

Our research on the present weight of authority reveals no definitive consensus among state and federal courts on the issue.[1] On appeal, plaintiff directs

---

[1] On one hand, some courts have adopted theories premised on the notion that an interpreter is a "language conduit" or "agent" of the non-English speaker. *See United States v. Vidacak*, 553 F.3d 344, 352 (4th Cir. 2009) ("[E]xcept in unusual

us, as he did at the hearing on his motion for a new trial, to a First Circuit case in which the court upheld the district court's decision to exclude hearsay statements made by unidentified declarants, determining that the district court "was well within

circumstances, an interpreter is no more than a language conduit and therefore his translation does not create an additional level of hearsay.") (quoting *United States v. Martinez-Gaytan*, 213 F.3d 890, 892 (5th Cir. 2000)); *Barron-Gonzalez v. State*, 426 S.W.3d 508, 514 (Ark. Ct. App. 2013) ("[I]t has generally been held that an interpreter is viewed as an agent of the defendant; thus, the translation is attributable to the defendant as her own admission * * *."). An oft-cited case from the United States Court of Appeals for the Ninth Circuit determined that "[t]he better approach is to consider on a case-by-case basis whether the translated statements fairly should be considered the statements of the speaker." *United States v. Nazemian*, 948 F.2d 522, 527 (9th Cir. 1991). It cited to several factors "which may be relevant in determining whether the interpreter's statements should be attributed to the defendant under either the agency or conduit theory," including "which party supplied the interpreter, whether the interpreter had any motive to mislead or distort, the interpreter's qualifications and language skill, and whether actions taken subsequent to the conversation were consistent with the statements as translated." *Id.*

However, other courts have taken the opposite view, finding that when an interpreter is utilized, there are two persons making statements—the person speaking to the interpreter and the interpreter themselves. *See State v. Gutierrez-Fuentes*, 508 P.3d 378, 389 (Kan. 2022) ("The inherent differences in languages mean that interpreters do not always convey a 'one-to-one correspondence between words or concepts in different languages,' the interpreter is a 'declarant' of her out of court statements * * *.") (quoting *United States v. Charles*, 722 F.3d 1319, 1324-25 (11th Cir. 2013)); *see also State v. Montoya-Franco*, 282 P.3d 939, 941 (Or. Ct. App. 2012) (determining that an "out-of-court translation of a non-English speaker's statements to a third party constitutes an assertion of the English meaning of the original statement").

Given the fact that so many courts have resolved the interpreter issue in quite different ways and the fact that the issue is still not definitively resolved, we decline to depart from our historical precedents in evaluating whether the trial justice abused her discretion in this case. *See generally* Zachary C. Bolitho, *The Hearsay and Confrontation Clause Problems Caused by Admitting what a Non-Testifying Interpreter Said the Criminal Defendant Said*, 49 N.M. L. Rev. 193 (2019).

its discretion when it concluded that they lacked the requisite 'indicia of reliability and trustworthiness.'" *Philibotte*, 2024 WL 1655919, at *4 (quoting *United States v. Barone*, 114 F.3d 1284, 1292 (1st Cir. 1997)). In the case at bar, plaintiff argues that the Spanish interpreter was an unidentified declarant and that the trial justice erred in finding that she was not, adding that "[s]uch a legal fiction has no origin in either Rhode Island or Federal case law and certainly no origin in the Rhode Island Rules of Evidence."

Conversely, RIPTA contends that the Spanish interpreter was not a declarant and Pena, who is identified, was the only declarant of her statements. It further asserts that her statements were admissible as that of a party opponent.[2] To support its argument, RIPTA cites to a string of federal case law, largely from the Fourth Circuit, endorsing the language conduit theory. All of the cases cited by defendant in that circuit rely on the court's holding in *United States v. Vidacak*, 553 F.3d 344 (4th Cir. 2009). There, the defendant was convicted of making false statements on his immigration application. *Vidacak*, 553 F.3d at 347-48. He completed the application with the help of an interpreter, and later argued that the testimony of an immigration officer was inadmissible double hearsay because the officer was

---

[2] Rule 801(d)(2)(A) of the Rhode Island Rules of Evidence provides that "[a] statement is not hearsay if * * * [t]he statement is offered against a party and is (A) the party's own statement, in either the party's individual or a representative capacity * * *."

- 12 -

relaying the statements of the interpreter who did not testify at trial. *Id.* at 351-52. The court held that the interpreter's statements did not create double hearsay because the interpreter was merely a language conduit and not a declarant for purposes of hearsay. *Id.* at 352.

We agree with the trial justice that the scenario under review presents an "interesting issue," in which our limited jurisprudence provides little guidance. However, we see no reason to part from the guidance that this Court has set forth in *Epstein* and *Terline* in order to reach RIPTA's desired result. As discussed *supra*, in *Epstein* and *Terline* this Court determined that the admission of like evidence— testimony recounting what a foreign-language speaker stated through the use of an interpreter—was improperly admitted as evidence at trial. *See Epstein*, 25 R.I. at 140, 55 A. at 208; *Terline*, 23 R.I. at 539, 51 A. at 208. In *Epstein*, we definitively stated that such evidence was "clearly hearsay testimony[.]" *Epstein*, 25 R.I. at 140, 55 A. at 208.

Furthermore, we are satisfied that the agency exception referenced in *Terline* has no application to the case at bar. Millard testified that he found the Spanish interpreter from a group of people waiting for buses and he asked if she could assist him. During her deposition, Pena did not mention a Spanish interpreter at all, and, at trial, Fernandez testified that Pena did not tell him anything about the presence of

a Spanish interpreter at the scene of the incident. It is without question, in our view, that the alleged interpreter cannot properly be deemed as an agent of Pena.

Moreover, it is clear to us that the contested evidence is lacking any indicia of reliability or trustworthiness. *See State v. Paster*, 524 A.2d 587, 589 (R.I. 1987) ("The theory of the hearsay rule is that many deficiencies, suppressions, sources of error and untrustworthiness, which lie underneath the bare untested assertion of a witness, may be best brought to light and exposed by the test of cross-examination.") (quoting 5 Wigmore, *Evidence*, § 1362 at 3 (Chadbourn rev. 1974)). Not only is the alleged Spanish interpreter unidentified (making her unable to locate), and her existence uncorroborated and disputed, but the record is devoid of *any* evidence of her credentials, certification, or even comprehension of the Spanish language.

We are additionally troubled by the lengthy delay in Millard's disclosure of her purported existence. By his own admission, Millard made no mention of the Spanish interpreter in his incident report, recorded the day of or, at the latest, the day following the incident. In fact, it was only at his deposition—taken almost five years later—that he first mentioned her presence at the scene of the incident and recounted her alleged role in interpreting Pena's statements. This substantial time gap serves as another factor weighing against its reliability. *See State v. Firth*, 708 A.2d 526, 531 (R.I. 1998) (explaining that "a statement relating back to an incident that took place nearly three and one-half years earlier lacks the type of reliability normally

associated with hearsay exceptions"). Accordingly, we are satisfied that the trial justice's admission into evidence of Millard's report and testimony as to what Pena told him, through the use of the Spanish interpreter, constituted an abuse of discretion.

We are cognizant that this case is before us on plaintiff's appeal from the trial justice's denial of his motion for a new trial. Rule 59(a) of the Superior Court Rules of Civil Procedure dictates that "[a] new trial may be granted to all or any of the parties and on all or part of the issues for error of law occurring at the trial or for any of the reasons for which new trials have heretofore been granted in the courts of this state." The 1995 Committee Notes to Rule 59 instruct[3] that "care must be taken to observe the provision of Rule 61 mandating the disregard of harmless error." Rule 61 of the Superior Court Rules of Civil Procedure provides:

> "No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

---

[3] Although nonbinding, "such notes can certainly be instructive and are appropriate for consideration in our analysis of a rule." *Cashman Equipment Corporation, Inc. v. Cardi Corporation, Inc.*, 139 A.3d 379, 384 n.4 (R.I. 2016).

- 15 -

Professor Kent has concluded "the principle [that Rule 61] embodies fully applies at the appellate level as well." Robert B. Kent et al., *Rhode Island Civil Procedure* § 61:1 at 588 (West 2024). We therefore consider whether the admission of the hearsay affected the substantial rights of the parties, and we determine that it did. We have stated that "the admission of hearsay is harmless when the record demonstrates that it is merely cumulative of proper evidence." *Now Courier, LLC v. Better Carrier Corp.*, 965 A.2d 429, 435 (R.I. 2009). It is evident to us that the challenged evidence can in no manner be deemed cumulative. Our review of the record reveals that Millard's report and testimony indicating that Pena told him that she had tripped was the only evidence of the kind that the jury could consider. Moreover, it was in direct contradiction to Pena's deposition testimony and Fernandez's testimony at trial that the bus driver closed the doors on her, causing her to fall and resulting in her subsequent injuries. Thus, we cannot say that its admission was harmless.

## IV

## Conclusion

For the reasons set forth herein, we reverse the Superior Court order denying the plaintiff's motion and remand for a new trial consistent with this opinion.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Galbin Fernandez, in his capacity as the Administrator of the Estate of Eva Pena v. Rhode Island Public Transit Authority et al. |
| **Case Number** | No. 2025-45-Appeal. (PC 15-2137) |
| **Date Opinion Filed** | July 15, 2026 |
| **Justices** | Suttell, C.J., Robinson, Lynch Prata, Long, and Indeglia (ret.), JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Melissa E. Darigan |
| **Attorney(s) on Appeal** | For Plaintiff: <br><br> Ronald J. Resmini, Esq. |
| | For Defendant: <br><br> Kathleen Wyllie, Esq. |

SU-CMS-02A (revised November 2022)